FILED
U.S. DISTRICT COURT
SAVANNAH DIV.
2006 DEC -6  PM 4:51

[signature]
SO. DIST. OF GA.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

| | |
|---|---|
| PATRICK ERIC CAIL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. CV605-041 |
| ) | |
| HUGH SMITH, Warden, ) | |
| ) | |
| Respondent. ) | |

## REPORT AND RECOMMENDATION

Petitioner has filed an application for a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. Respondent has filed an answer. Doc. 11. For the reasons that follow, it is recommended that the petition be GRANTED.

## I.  BACKGROUND

On January 13, 1995, a Tattnall County grand jury indicted petitioner on a charge of aggravated assault. Resp. Ex. 1. The indictment arose out of an incident occurring at the Georgia State Prison on March 7, 1994, where petitioner had been incarcerated since 1989 pursuant to convictions

in the Lowndes County Superior Court for aggravated assault and possession of a firearm during the commission of a crime.[1] See Cail v. State, 391 S.E.2d 444 (Ga. App. 1990). Petitioner pleaded not guilty to the charge, and a jury subsequently convicted him on November 30, 1995. Resp. Ex. 1. The trial court sentenced petitioner to nine years' imprisonment to run consecutively to any other sentence he had at that time. Id.

Petitioner filed a motion for new trial on December 29, 1995, and hearings were set for November 2001 and March 2003. That motion, however, has remained pending in the trial court for some eleven years. Resp. Ex. 1; Doc. 10. Petitioner filed a state petition for habeas corpus in the Tattnall County Superior Court on October 22, 2002. Resp. Ex. 3. The state habeas court held a hearing on that petition on January 22, 2003, at which time the court stayed the state petition so that the trial court could take up both the motion for new trial and habeas petition at a hearing on the motion for new trial set for March 26, 2003. Resp. Ex. 4. No transcript

---

[1] Respondent indicates that petitioner was serving a twenty-year sentence on the aggravated assault conviction and a consecutive five-year sentence based on the possession of a firearm conviction. Doc. 10.

of the March 26, 2003 hearing exists.[2]  Doc. 10.

Petitioner executed the instant federal habeas petition pursuant to 28 U.S.C. § 2254 on May 10, 2005, asserting the following grounds for relief:

1. Trial counsel was ineffective for:
   a. failing to prepare a defense;
   b. failing to file timely pre-trial and post-trial motions;
   c. failing to correspond with petitioner to make preparations for his motion for new trial and notice of appeal;
   d. failing to pursue petitioner's appeal and abandoning the case and appeal without notice to petitioner.
2. Petitioner was deprived of his statutory right to appeal his conviction and sentence.
3. Petitioner was denied due process because petitioner did not have counsel to represent him on his motion for new trial and first direct appeal.
4. Petitioner was forced to proceed in his trial for aggravated assault without notice since he never received a copy of the arrest warrant or indictment and never had an arraignment hearing.
5. The verdict was against the weight of the evidence.
6. The trial court erred by failing to charge the jury on the element of intent as it pertains to aggravated assault.

Doc. 1.

Respondent filed a motion to dismiss the instant petition for lack of exhaustion on August 26, 2005.  Doc. 9.  Respondent contended that

---

[2]Whether or not this hearing actually occurred remains unclear, for respondent fails to inform the Court of the nature or result of that hearing but instead simply states that the state court has not yet prepared a transcript of that hearing.  Doc. 10.

petitioner had failed to exhaust his state remedies with respect to his claims since his conviction had not been reviewed on direct appeal. Id. The Court denied respondent's motion, stating that "[p]etitioner's state case has been at a standstill for more than nine years, despite the fact that [p]etitioner filed a petition for writ of habeas corpus in state court more than three years ago." Doc. 14 (Report and Recommendation adopted as Order of the Court by doc. 17). Thus, the Court concluded that it would be inappropriate to dismiss the petition in the "vague hope" that the state courts would act on petitioner's direct appeal. Id. Respondent subsequently submitted a brief in support of his answer and petitioner filed a reply to respondent's answer. Docs. 20, 24.

## II. DEPRIVATION OF DUE PROCESS

The essence of petitioner's federal habeas petition is that, through the ineffectiveness of his counsel and the inattention of the trial court, he has been denied his due process right to a direct appeal of his conviction on account of the extraordinary delay in the trial court's disposition of his motion for new trial. Doc. 1. Respondent asserts that this contention does

not afford petitioner any ground for federal habeas relief since the United States Supreme Court has not recognized a constitutional right to a speedy appeal. Doc. 20.

Although the Supreme Court has never held that there is a constitutional right to an appeal, it has stated that once a state elects to provide avenues of direct appellate review, those processes must comport with due process and equal protection. Evitts v. Lucey, 469 U.S. 387, 393 (1985). In Barker v. Wingo, 407 U.S. 514 (1972), the Supreme Court set forth four factors for courts to employ in evaluating a criminal defendant's contention that he was denied a speedy trial on account of a delay between his arrest and trial. The Court adopted an ad hoc balancing test to evaluate such a claim, under which courts consider the "[l]ength of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." Id. at 530. Although the Supreme Court has never extended these factors to assessing delay in the appellate process, several circuit courts have done so with slight modifications to reflect the interests

of a criminal defendant in pursuing his appeal in the state courts.[3] The former Fifth Circuit has employed these factors to evaluate delays in criminal appeals, noting that "not every delay in the appeal of a case, even an inordinate one, violates due process" but that an "ad hoc evaluation of the four [Barker factors] is appealing as a means to determine whether a denial of due process has been occasioned in any given case." Rheuark v. Shaw, 628 F.2d 297 (5th Cir. 1980) (ad hoc evaluation of the Barker factors established that a two-year delay in preparations of trial records for petitioner's direct appeal violated petitioner's due process rights). See also United States v. Smith, 94 F.3d 204 (6th Cir. 1996); Simmons v. Reynolds, 898 F.2d 865 (2d Cir. 1990); Coe v. Thurman, 922 F.2d 528 (9th Cir. 1990); Burkett v. Cunningham, 826 F.2d 1208 (3d Cir. 1987).

When applied to the instant case, the Barker factors weigh in favor of a finding that petitioner suffered a deprivation of his constitutional due

---

[3] The Georgia Supreme Court has also recognized that "substantial delays experienced during the criminal appellate process implicate due process rights." Chatman v. Mancill, 626 S.E.2d 102, 107 (Ga. 2006). In that case, the court adopted the Barker framework to assess "the fairness and prejudice issues that arise in cases involving the delayed resolution of direct appeals from judgments entered on criminal convictions in which the death penalty was not imposed." Id. at 107.

process rights, as his motion for new trial has languished in the state court for the unbelievable period of eleven years. Petitioner was convicted on November 30, 1995 on charges of aggravated assault. Resp. Ex. 1. Petitioner filed a motion for new trial on December 29, 1995, and the state court has failed to hold a hearing or issue a ruling on that motion. That such a delay is excessive is beyond dispute. Respondent fails to offer any justification for this outrageous delay but merely states that petitioner's trial counsel has been replaced and that "the state courts have again been alerted to [p]etitioner's situation and appear to be progressing toward a resolution." Doc. 20. Petitioner asserts that he has made several inquiries into the status of his motion and has attempted to determine whether his attorney filed a direct appeal, but he has not received any information or been able to secure any sort of resolution of his motion. Docs. 1, 24. Petitioner also contends that he has made repeated efforts to contact his attorney regarding the motion for new trial and direct appeal but that his attorney has not responded to him. Id. The final factor, prejudice to petitioner, also weighs in petitioner's favor. An eleven-year delay in appellate review of a criminal conviction may result in substantial prejudice

to a criminal defendant: not only may the defendant be required to serve a sentence on an invalid conviction, but the more time that elapses between the conviction and the appeal increases the possibility that a convicted person's grounds for appeal and his defenses in case of reversal and retrial may be impaired. Consequently, petitioner has suffered a due process violation by the actions of the state court in his attempt to secure either a new trial or appellate review of his conviction before the state courts.

## III. THE REMEDY

The delay petitioner has experienced is intolerable, especially in light of the fact that respondent does not even attempt to put forth a justification for the delay. While petitioner may have been able to pursue a writ of mandamus under Georgia law to compel the state court to address his motion for new trial (had he known such a remedy existed), he was represented by an attorney who neglected to do so. See O.C.G.A. § 9-6-20 ("[a]ll official duties should be faithfully performed; and whenever, from any cause, a defect of legal justice would ensue from a failure to perform . . . the writ of mandamus may issue to compel a due performance, if there

is no other specific legal remedy for the legal rights."). Rather, after losing contact with his court-appointed counsel, petitioner pursued review of his conviction by filing a state petition for habeas corpus and subsequently filing the instant federal petition. While petitioner arguably had a state remedy available to him, "[t]he doctrine of exhaustion of state remedies does not require a prisoner to wait six years . . . or even three or four years before enlisting federal aid to expedite an appeal." Simmons, 898 F.2d at 870.

The former Fifth Circuit has commented that "[t]he cancerous malady of delay, which haunts our judicial system by postponing the rectification of wrong and the vindication of those unjustly convicted, must be excised from the judicial process at every stage." Rheuark, 628 F.2d at 304. "The usual disposition of a meritorious habeas petition based on a delayed appeal is to grant an alternative writ that orders the state either to prosecute the appeal within a specified reasonable period of time, or to release the petitioner." Simmons, 898 F.2d at 869. See also Coe, 922 F.2d at 532-33 (refusing to condone the "otiose progression" of certain state criminal appeals and adopting the remedy employed by the Second Circuit as a

9

means of addressing the constitutional deprivation occasioned by such delays). This remedy serves three purposes: "it limits the time state courts may delay; it grants a prisoner the required relief, his appeal; and it provides federal courts with an effective means to protect prisoners' rights to appeal." Id. at 870. The Court finds that this remedy is appropriate to remedy petitioner's deprivation in the instant case so that he will be able to pursue a direct appeal in the Georgia court of appeals, which can then engage in a proper review of his conviction.

## IV. CONCLUSION

Petitioner has suffered a constitutional due process violation based upon the state court's failure to resolve his motion for new trial. Petitioner's instant request for federal habeas relief should therefore be GRANTED. Accordingly, the state court should be DIRECTED to decide petitioner's motion for new trial within thirty days of this Report and Recommendation or to release petitioner from custody after he completes his 1989 Lowndes County sentence. Following the resolution of that motion, petitioner may pursue an appeal in the Georgia Court of Appeals,

which should endeavor to expedite its disposition of an appeal that should have been resolved a decade ago.

**SO REPORTED AND RECOMMENDED** this ____5^{Th}____ day of December, 2006.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA